## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARTY CALDERON                                    :NO.
    PLAINTIFF

V.

Jeff Symeon, West Marine, Inc.,                   :JULY 10, 2006
Boat/US, Inc. and St. Paul Travelers
Insurance, Incorporated
    DEFENDANTS

### COMPLAINT

1. The Plaintiff is Marty Calderon, and she is a 45 year Hispanic female of mixed

    racial heritage and she has resided in the State of Connecticut for most of her

    life and has a B.S. Degree in Business and is a graduate of law school.

2. The Plaintiff claims this court has jurisdiction over all of her claims pursuant to

    28 U.S.C. Section 1331, 42 U.S.C. Section 1981, 1985, 1986, the United

    States Constitution 1st Amendment Freedom of Speech, Title VII of the Civil

    Rights Act, C.G.S. Section 46a-60, and concurrent/supplemental jurisdiction

    pursuant to the Connecticut General Statutes Section 31-51q, 31-290(a), 31-

    294(d)(a), 31-313, 46a-60, 42-110 et sequence and 42-110g, and the

    Connecticut Constitution Article 1 Section 10, and the state of Connecticut

    common law claims of personal injury torts, premise liability, and defamation

    and slander and the Federal Age Discrimination in Employment Act of 1963,

    for people over 40 years, and the Equal Pay Act of 1963.

3. The Defendant, West Marine, Inc. has at least eight stores in the State of

    Connecticut, is a national corporation, with its head corporate office located at,

500 Westridge, Watsonville, CA, 95076 and they also own or have owned

Boat US Corporation.

4. The Defendant, Jeff Symeon, was the Plaintiff's manager who is employed by

West Marine, Inc. and was hired by the Defendants, West Marine, Inc. since

on or about March of 2005 (see Exhibit #1-Jeff Symeon resume).

5. The Defendant, St. Paul Travelers Insurance, is the worker's compensation

insurance company which authorizes the payments and medical coverage of

claims for the Defendants, West Marine, Inc.

6. The Defendants, St. Paul Travelers Insurance Company, employs, Mr. David

Ford, who works at their Hartford, Connecticut office located at 300 Windsor

Street, Hartford, CT 05120.

7. Throughout, April of 2006 and June of 2006, the Defendant, West Marine, Inc.

was recruiting cashiers and sales people for their summer season of boating

supply customer sales.

8. The Plaintiff claims that an employee, manager, of West Marine, Inc., Jack

Erickson, of Bridgeport, Connecticut, hired the Plaintiff on April 20, 2006

during an interview and after she had applied for employment with the

Defendant, West Marine, Inc..

9. The Plaintiff was hired to work at the Defendant's retail store, West Marine

Inc., 5 Washington Street, Norwalk, Connecticut 06854.

10. The Defendant, was told by Jack Erickson, that she would be paid $10.00 per

hour to cashier (see attached job description, Exhibit #2).

11. West Marine, Inc. employee, Jack Erickson was hired three weeks prior to

2

the complainant as manager of the store the Plaintiff worked in.

12. The Plaintiff claims that shortly after she was hired, by Jack Erickson, Mr. Erickson was fired and terminated by West Marine, Inc. claiming that he had a problem with a customer and the Defendants made it known to all the employees in the store that Jack Erickson was terminated/fired.

13. The Plaintiff claims that shortly before Jack Erickson was terminated by the Defendants, he openly made complaints about the Defendants not training him properly and not paying him on time.

14. The Plaintiff has reason to believe that the Defendants retaliated against him because he made complaints to the corporate office of the Defendant, West Marine, Inc..

15. The Plaintiff claims that West Marine, Inc. hired, Jeff Symeon, a prior West Marine, Inc. employe whose prior job was inventory management, to be the store manager in place of Jack Erickson who was terminated, seven though the Defendant, Mr. Symeon had very little experience.

16. The Plaintiff claims that Jeff Symeon, was immediately placed in charge as manager of the Plaintiff and gave her her weekly schedule of work hours.

17. At the time that Jeff Symeon, became the manager of the Plaintiff, the Plaintiff was working (30) thirty hours per week, including Saturdays and Sundays.

18. The Plaintiff typically worked (8) hours on Saturday and Sundays.

19. The Plaintiff claims that after the Defendant, Jeff Symeon became the Plaintiff's manager, he immediately started to mistreat the Plaintiff in every

3

way by verbally abusing her in a sexist and sexual manner, and that, the Defendant, West Marine, Inc. condones a sexually hostile work environment toward female employees who work for West Marine, Inc.

20. The Plaintiff claims that Jeff Symeon sexually harassed the complainant, wanted to date her, and became openly upset when she refused his advances towards her.

21. The Plaintiff claims that after she refused the sexual advances Jeff Symeon would openly demean the complainant in front of other male employees and call her a dumb broad and allow his subordinate male employee, Stefan, to call her "wetback."

22. The Plaintiff claims that the Defendant's employee, Stefan, who had worked for the Defendants for over two years, and is a "keyholder" was openly hostile to the Plaintiff both sexually and racially, by making sexual comments to the Plaintiff such as, "I hope an old man comes into her and rams her from the back."

23. The Plaintiff claims that the Defendant's employee, Stefan, who had worked for the Defendants for over two years, and is a "keyholder" was openly hostile to the Plaintiff both sexually and racially, by making racial comments to the Plaintiff such as he did on the morning of June 3, 2006, "She is colored."

24. The Plaintiff believes, Jeff Symeon, told his subordinate male employee, to talk to the Plaintiff in a sexually demeaning and racially degrading way so as to get her to quit her job.

25. The Plaintiff claims that in retaliation for the Plaintiff refusing Jeff Symeon's

4

sexual advances, Jeff Symeon forced the Plaintiff to work (12) twelve hour

shifts on Saturdays and (9) hour shifts on Sundays and this caused the

Plaintiff to injure her right ankle, by twisting it on the job while climbing a

ladder and she was forced to work on it during a twelve hour shift on Saturday

and then the following day, Sunday, for (9) hours, or face termination if she

asked to go home on sick leave and the Defendants should have

accommodated her ankle injury (see Exhibit #18).

26. The Plaintiff claims that after she refused Jeff Symeon's sexual advances

towards the complainant, Jeff Symeon authorized other male employees to

sexually harass the complainant.

27. The Plaintiff claims that Jeff Symeon allowed other male employees, to do

things to the Plaintiff, such as squeeze their genitals in front of the

complainant and make racial remarks to her calling her, "colored."

28. The Plaintiff claims that on or about, June 3, 2006, when she came into work,

her manager, Jeff Symeon, had burned and made personal music cd's that he

wanted the Plaintiff to hear personally on the sound system in the store.

29. The Plaintiff claims that on or about, June 3, 2006, when the Plaintiff came

into work at 8:00 a.m., Jeff Symeon's subordinate, Stefan, who was a

"keyholder" for the Defendant, West Marine, Inc. store and had worked there

for several years, told the Plaintiff that she had to listen to the music compact

discs that Jeff Symeon had personally made.

30. On or about June 3, 2006, the Plaintiff claims that Jeff Symeon's subordinate,

Stefan, proceeded to play Jeff Symeon's compact disc with the song from the

movie, "Moonstruck", "That's Amore," and told the Plaintiff that she had to listen to it.

31. This made the Plaintiff very upset, and she did not feel safe working on Saturdays, the day of the week when the Plaintiff's manager, Jeff Symeon was on the schedule with the Plaintiff.

32. In addition to the Plaintiff, not feeling comfortable with working with her manager, Jeff Symeon, because of his sexual advances to her, the Plaintiff claims that after working (12) hours shifts on Saturdays and (9) hours shifts on Sundays, the Plaintiff's right ankle became very sore and twisted and on or about June 3, 2006, asked her manager, Jeff Symeon, to reduce her Saturday hours or take her off the Saturday schedule. In response, to the Plaintiff's request, Jeff Symeon, changed the Plaintiff's hours to (20) twenty hours per week, with Saturdays off and refused to put her on the schedule for Saturday unless she would work (12) twelve hours and in addition, her hour were later changed to 19.5 hours per week.

33. The Plaintiff was told to work on Monday, Wednesday, and Friday mornings mostly with Bruce Patterson (see Exhibit #3 Business Card), on Monday, Wednesday, and Sundays while Jeff Symeon was training a new Assistant Manager.

34. At that point in time, after June 3, 2006, the Plaintiff really never worked another shift with her manager, Jeff Symeon and he came into the store to work when the Plaintiff was not there.

35. The Plaintiff claims that on June 23, 2006, Jeff Symeon terminated the

6

Plaintiff, by leaving a message on her answering machine, stating that he was taking her off the schedule, that she did not have to come in anymore.

36. On June 23, 2006, the complainant claims that Jeff Symeon terminated the Complainant by stating on her answering machine, that she was being terminated because of an "anchor" problem.

37. On June 23, 2006, Jeff Symeon, never came into the West Marine store during the Plaintiff's shift from 8:00 – 12:00 p.m., and the only employee the Plaintiff worked with on her last morning of work was her co-worker, Stefan.

38. On June 23, 2006, the Plaintiff had her menstrual period, and the Plaintiff asked Stefan to go find a particular "anchor," for a customer in that the steel "anchors" were heavy and in response to this request, Stefan told the Plaintiff he could not find the "anchor."

39. On June 23, 2006, Jeff Symeon's subordinate, Stefan refused to assist the Plaintiff with customers and the Plaintiff by herself, waited on all but one customer who came into the store that morning.

40. The Plaintiff, had to find boat parts for all the customers, while her co-worker Stefan, just sat in the office in back of the register all morning.

41. On June 23, 2006, between 10:00 a.m. and 11:00 a.m., the assistant manager Bill came into the store to get his paycheck, and the Plaintiff in writing and verbally requested and told Bill that she would need to take a personal day off on Friday, July 7, 2006 for a family matter in that she had to make a court appearance in support of her son, of whom she is legal conservator for.

7

42. Bill responded to the Plaintiff that she would have to ask the manager, Jeff Symeon personally and the Plaintiff told Bill that she wrote it on the "Requested Time Off" board in the store office, just like all the other employees are required to do and she told Bill that she never see the manager, Jeff Symeon, because she does not and will not work on his Saturday shift.

43. On June 23, 2006, after another co-worker, Chris, came into the West Marine store at 11:00 a.m., and no customers were in the store, the Plaintiff, was told by the Assistant Manager, Bill, that she could leave early if she wanted to.

44. On June 23, 2006, the Plaintiff, was told by Stefan, her co-worker, prior to leaving the store for the day, that, "a black man used to come in this store, but he does not any longer."

45. The Plaintiff, claims that Jeff Symeon terminated the complainant without warning because she had been refusing his sexual advances and that her termination was a quid pro quo termination.

46. The Plaintiff also claims that Jeff Symeon terminated her on June 23, 2006, in retaliation for exercising her U.S. Constitution 1st Amendment Freedom of Speech Rights pursuant to the public policy of requesting time off on Saturday shifts of 12 hour work days due to her right ankle injury and for giving him two week notice on June 23, 2006, that the Plaintiff was requesting the day of July 7, 2006 off, due to her right to request family medical leave off for a member of the family who is ill and needs assistance and of whom the Plaintiff is legal

8

Conservator of.

47. The Plaintiff claims that after she requested to be taken off the schedule on Saturdays, due to her ankle soreness, Jeff Symeon would make fun of her by referring to the complainant as a "lame duck," instead of treating her pursuant to the advertised company policy, (see Exhibit # 4-time off policy).

48. The Plaintiff also claims that the Defendants failed to accommodate her with a part time schedule comparable to other employees, because they wanted her to quit her job, because they were afraid of a workmen's compensation claim, and because they were afraid of a sexual harassment claim by the Plaintiff in that she adamantly refused to engage in sexual misbehavior with the Defendants or their male employees while she worked at West Marine, Inc..

49. The Plaintiff claims that Jeff Symeon had preplanned the termination of the complainant, by hiring, at least three other male employees to work for West Marine, Inc. full time in place of the complainant and then on June 23, 2006, Jeff Symeon staged a retaliatory termination of the complainant by calling her on the telephone and leaving a message that she was "let go."

50. The Plaintiff's claim that by the time she was terminated by Jeff Symeon, on June 23, 2006, Jeff Symeon had already hired three or more males to replace the complainant in an effort to stage the complainant's termination of June 23, 2006.

51. The Plaintiff claims that the Defendants also pay the male employees more than the female employees of the Defendant's West Marine, Inc. national

9

retail stores.

52. The Plaintiff claims that some male employees get commissions for sale and the females do not.

53. The Plaintiff claims that the Defendants, Jeff Symeon, and West Marine treat the male workers with better pay and respect than the female workers.

54. The Plaintiff claims that she was also discriminated against because of her age of (44) forty four years old, in that most of the workers are males between 15 years old and 26 years old, and still in high school of college and that the Defendants used the Plaintiff to work for their retail store in Norwalk, CT, until most of the younger males college and/or high school students were finished with school on or about the week of June 10, 2006, and then the Defendant, Jeff Symeon wrongfully discharged the Plaintiff for discriminatory reasons in that she refused his sexual advance and she opposed working (12) twelve hour Saturdays because of her right ankle soreness and she was limping after the long weekends.

55. The Plaintiff also claims Jeff Symeon encouraged the other male employees to call the complainant old.

56. The Plaintiff claims that she has a law degree and B.S. Degree in Business and did not deserve the treatment she received at West Marine, Inc. and by their manager, employee, Jeff Symeon.

57. The Plaintiff claims that Mr. Jeff Symeon used and abused the complainant both physically by making her work (12) twelve hour shifts and emotionally distressed her with sexual harassment, prior to letting her go when she

10

refused his advances toward her.

58. The Plaintiff claims that after Mr. Jeff Symeon terminated the complainant on
June 23, 2006, he refused to pay her the next day in accordance with the
Connecticut Department of Labor wage law.

59. The Plaintiff claims that during her employment with West Marine, Inc., Mr.
Jeff Symeon allowed a racially insensitive environment, at the West Marine
retail store the Plaintiff worked in, and refused to hire Hispanics or African
Americans, even though several minorities regularly applied for work at the
store after they advertised in big letters, "Now Hiring," in the front of the store
in that the West Marine store the Plaintiff worked in is located in Norwalk,
Connecticut, which is a racially integrated neighborhood.

60. The Plaintiff claims that her manager, Jeff Symeon, did not hire her, and
became racially insensitive to her, when he found out that she was of
Hispanic descent, in that the Complainant's father is Hispanic.

61. The Plaintiff claims that the respondent, West Marine, Inc. and Boat US
has a poor reputation and history of condoning a racially insensitive working
environment and a condoning a sexually hostile work environment towards
women.

62. The Plaintiff claims that the respondents never offered her a transfer to
another store, despite the fact that she could not work with, her manager,
Jeff Symeon anymore, in that he was insensitive to her and this cost her to
lose wages.

63. The Plaintiff claims that the respondents could have offered her a transfer

11

to another store, but she was told that employees were not allowed to transfer to another retail store, despite the fact that West Marine, Inc. has several stores in the state of Connecticut.

64. The Plaintiff claims that the Defendant, West Marine, Inc. encourages its employees to give a "line" to customers and fellow employees (see Exhibit # 5-2 page Business Operating Lines).

65. The Plaintiff claims that on June 23, 2006, she was improperly terminated and not according to policy and the Defendant company procedure (see Exhibit # 6, Corrective Action Policy and Form).

66. The Plaintiff also claims that the Defendant, Jeff Symeon failed to discipline other younger male employees for sexually and racially harassing the Plaintiff (see Exhibit # 7, Store Manager Job Description).

67. The Plaintiff claims she was the only female working in the store throughout the whole time she was employed by the Defendants.

68. Per the Defendant's West Marine own company policy, the Plaintiff claims that Gina Volpe, is the Employment Specialist, at the Defendant, West Marine, Inc., however, she did not know why the Plaintiff was terminated and gave the Plaintiff a voice mail message asking the Plaintiff to call her and tell her why she was terminated on June 23, 2006 of which the Plaintiff corresponded by email (see Exhibit # 8-email with Gina Volpe).

69. The Plaintiff claims that she started a dialogue with both Gina Volpe of West Marine, Inc. by email when Ms. Volpe left a message on the Plaintiff's voice mail inquiring about her termination.

70. The Plaintiff claims that she requested her personnel file from both Jeff Symeon and Gina Volpe but she has yet to receive it (see Exhibit 9).

71. The Plaintiff claims that after she was terminated on June 23, 2006 and did not come into work that weekend, on June 26, 2006 she had to go to the emergency room with pain in her right foot/ankle which was still swollen from it being twisted at work and overused at work on the weekend shifts.

72. The Plaintiff was told on June 26, 2006 to not overuse her foot/ankle and he gave her an air splint and told her to take muscle relaxant (see Exhibit # 10-medical records).

73. The Plaintiff immediately sent the Defendant Jeff Symeon, a certified letter requesting that he disclose the Defendant, West Marine, Inc. workmen's compensation insurance carrier because she realized her ankle injury was not getting better and she would need continued medical/orthopedic treatment.

74. On June 30, 2006, the Defendant, West Marine, Inc. employee, Karen Perry Wilson, emailed the Plaintiff, an injury incident report form of which the Plaintiff filled out and faxed back on June 30, 2006, at about 3:00p.m. Western time, to the Defendant's California corporate office (see Exhibit # 11-Injury Incident Report Fax to Ms. Wilson).

75. The Plaintiff, claims that after she faxed the injury incident report form for her right ankle, the Defendants, West Marine Inc. proceeded to engage in a stalling tactic, by employing and conspiring with the Defendant, St. Paul Traveler's Insurance Company employee, David Ford, to delay and not

assist the Plaintiff to be treated by an Orthopedist Doctor for her ankle injury and soreness and swelling (see Exhibit # 12 -email form the Defendant, West Marine, Inc., Karen Perry Wilson, who first claimed that there was a list of treating doctors that the Defendants use to treat employees who receive injuries as a result of job related work, of which the Plaintiff was never given on the job or after she was terminated.

76. The Plaintiff claims that instead, she was given a claim number #CIN7196, and a telephone number, 877-828-4110 which is the Defendant, St. Paul Insurance, telephone number for their claims agent, David Ford, and the Plaintiff was instructed by email that their insurance carrier would have to approve the referral of the Plaintiff to a doctor in the network for her foot injury (see Exhibit # 13-July 6, 2006 email from the Defendant, West Marine, Inc., employee, Karen Perry Wilson.

77. The Plaintiff claims that the Defendants, West Marine, Inc. and Jeff Symeon, conspired with the Defendant's St. Paul Traveler's Insurance Company and St. Paul Traveler's Insurance Company employee claims agent, Mr. David Ford, to deprive the Plaintiff of her statutory right to medical care for her right foot injury as a result of twisting it at the Defendant's premises while she worked there and causing her to overuse it after she injured it by the Defendant, Jeff Symeon forcing the Plaintiff to work over 20 hours within a 24 hour period, give or take a couple of hours (a continual Saturday and Sunday).

78. The Plaintiff claims that on July 6, 2006, the Defendants continued to

14

conspired to deprive the Plaintiff of medical care to treat her right foot injury which she received on the job, when the Plaintiff was forced to consult with Mr.. David Ford in a half an hour telephone conversation from about 3:30 p.m. In which Mr. David Ford, a claims agent for the Defendant, St. Paul Travelers Insurance, asked the Plaintiff a series of questions, and then told the Plaintiff that he would not cover the Plaintiff's medical care of her right ankle until he received the medical record from the Plaintiff's treating hospital.

79. On July 6, 2006, the Plaintiff faxed the Defendant, St. Paul Travelers, copies of the Plaintiff's doctors orders and the Plaintiff still has not received any authorization from the Defendants for the medical care of her right foot, so in effect the Defendant are denying the Plaintiff the right to medical care that she needs now, as a result of her injury and soreness to her right ankle from twisting and overuse of it at the Defendant's West Marine, Inc. retail store, in Norwalk, CT.

80. The Plaintiff claims that on July 6, 2006 at about 3:30 p.m. the Plaintiff had a telephone interview with the Defendant, St. Paul Traveler's claim agent, David Ford, who asked her the following questions of which the Plaintiff replied:

81. a. **David Ford Question:** Do you have any other physical problems?
Plaintiff's Response: I get chest pains from stressful situations.

b. **David Ford Question:** What does you doctor's notes say?

<u>Plaintiff's Response:</u> The doctor's notes said to use crutches and that the foot is suffering from overuse/swollen.

c. **David Ford Question:** Why did you not report the incident on the day it occurred, (meaning to take time off from work).

<u>Plaintiff's Response:</u> I stated to Mr. Ford that Jeff Symeon threatened me the day after Mother's Day, June 15, 2006, and he threatened other employees with termination if we took any time off from work without two weeks notice. I told him that on June 3, 2006, that I told Jeff Symeon that I could no longer work the (12) hour Saturdays due to the ankle injury and soreness and that Jeff Symeon agreed to take me off the schedule for Saturdays and he replaced me with at least three other male employees who were finished with school for the season. I also told David Ford that Jeff Symeon was well aware of my injury because he referred to me as a "lame duck" and made fun of me because I was limping.

d. **David Ford Question:** He asked me what occurred on the day of my termination of employment with the Defendant's West Marine, Inc..

<u>Plaintiff's Response:</u> I told him that when I came into work on the morning of June 23, 2006, that only me and the Defendant's employee, Stefan, were on my shift and I had my menstrual period and I asked Stefan to check to see if a certain anchor was in stock for a customer and that later that evening I received a voice mail message from the Defendant, Jeff Symeon, stating that I was terminated for the anchor problem.

e. **David Ford's Question:** He asked me if I ever had preexisting injury that

16

ankle before and was it work related.

Plaintiff's Response: I responded that I had sprained it by falling down the stairs but it was not work related.

82. The Plaintiff claims that despite the fact that she has incurred Intentional Infliction of Emotional Distress, an injury to the right foot which has burning sensations, stiffness and pain shooting up the back of the right leg, all job related, all of the Defendants have conspired to not authorize the medical treatment of the Plaintiff for her injuries despite the fact that she has signed a medical release of the Plaintiff's medical records of her foot injury and has mailed the Defendant, St. Paul Travelers a copy of her medical records and faxed him the Doctor's notes on July 6, 2006 (see Exhibit #14-Plaintiff's medical records and release) in an effort to avoid any liability for the Plaintiff's personal injuries causing the Plaintiff further emotional distress and further injury to the Plaintiff's right foot from not obtaining the proper medical care in that she has no private medical plan of which the Defendants are well aware of.

83. The Plaintiff claims the Defendants racially discriminated against her because of her race and they also discriminated against because of her age and gender and used racially motivated tactics to discourage her from taking time off to heal her right foot injury (see Exhibit # 15, West Marine, Inc., Standards and Practices, paragraph #4, time off is considered, BLACK OUT PERIOD, [written by Jeff Symeon for the Defendant's West Marine, Inc.]).

84. The Plaintiff claims that the only person who can authorize medical

17

coverage for the Plaintiff's personal injuries are the Defendants, St. Paul Travelers, see Exhibit #16.

85. The Plaintiff claims all counts and claim for damages arise from the Plaintiff's claims in Paragraphs 1-84, and have jurisdiction pursuant to paragraph 2 of this complaint.

86. Count 1-The Plaintiff claims monetary damages for lost wages in the amount of $250.00 per week for front pay and back pay for every week  of lost work (see Exhibit # 17, Plaintiff's prior payroll checks).

87. Count 2-The Plaintiff claims emotional distress damages in excess of $100,000.

88.Count 3-The Plaintiff claims personal injury damages in excess of $500,000 for permanent or partial disability and the loss of future wages from such personal injury.

89.Count 4-The Plaintiff claims punitive and compensatory damages for the Defendants willful, wanton, hostile, and malicious conduct towards the Plaintiff during and after the Plaintiff's employment with the Defendants in excess of $500,000.

90. Count 5-The Plaintiff claims compensatory damages for medical expenses for her injuries sustained during the Plaintiff's employment with the Defendants in excess of $15,000.

91.Count 6-The Plaintiff claims compensatory and punitive damages in excess of $100,000 for the Defendants engaging in unfair trade practices pursuant to C.G.S. Section 42-110(g).

92. Count 7- The Plaintiff claims damages in excess of $15,000 for slander and defamation for the Defendants reckless disregard of the truth or falsity of their statements on and after June 23, 2006 regarding the Plaintiff.

93. Count 6-The claims attorney's fees pursuant to relevant statutes.

Exhibits Attached:

Exhibit #1 – Jeff Symeon Resume.

Exhibit #2-West Marine, Inc., Job Description for Cashiers.

Exhibit #3- West Marine, Inc. Assistant Manager Bruce Patterson business card.

Exhibit #4-West Marine, Inc. Time Off advertised policy.

Exhibit #5-West Marine, Inc. Business Operating Lines.

Exhibit #6-West Marine, Inc. Corrective Police and Action Form.

Exhibit #7- West Marine Inc. Store Manager Job Description.

Exhibit #8-West Marine Inc., Email with Gina Volpe.

Exhibit #9-Email to/from Gina Volpe.

Exhibit #10-Medical records.

Exhibit #11-Injury Incident Report Form dated June 30, 2006.

Exhibit #12-Email from West Marine, Inc. employee Karen Wilson regarding personal injury medical coverage.

Exhibit #13-Email from West Marine, Inc. employee Karen Wilson regarding personal injury medical coverage dated July 6, 2006.

Exhibit #14-Plaintiff's medical records and Fax to David Ford, at St. Paul.

Exhibit #15- West Marine, Inc. Standards and Practices, paragraph #5, referring time off as "Blackout Period."

Exhibit #16-West Marine, Inc., June 29, 2006, letter to Plaintiff notifying her of their insurance carrier, the Defendant, St. Paul Travelers.

Exhibit #17-Plaintiff's payroll checks from West Marine, Inc..

Exhibit #18-Copies of Plaintiff's schedule.

PLAINTIFF

Marty Calderon
P.O. Box 503
Norwalk, CT 06852
(203)524-0491

20